Citation Nr: 1448559 
Decision Date: 10/31/14 Archive Date: 11/05/14

DOCKET NO. 11-15 153 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Winston-Salem, North Carolina


THE ISSUE

Entitlement to service connection for a left knee disorder.


REPRESENTATION

Veteran represented by: North Carolina Division of Veterans Affairs


ATTORNEY FOR THE BOARD

K.C. Spragins, Associate Counsel







INTRODUCTION

The Veteran had active duty service in the United States Marine Corps from October 2002 to October 2006. This matter comes to the Board of Veterans' Appeals (Board) from a June 2008 rating decision issued by the Department of Veterans' Affairs (VA) Regional Office (RO) in Winston-Salem, North Carolina.

The Veteran was scheduled for a hearing at the RO in December 2013. He failed to report for the scheduled hearing without explanation. He has not requested that the hearing be rescheduled. Therefore, his request for a Board hearing is deemed to be withdrawn. See 38 C.F.R. § 20.704 (2014).

In a May 2014 decision, the Board remanded the claim to the Agency of Original Jurisdiction (AOJ) for additional development and readjudication. The case has since been returned to the Board for appellate review.

This appeal was processed using the Virtual VA paperless claims processing system and the Veterans Benefits Management System (VBMS). Accordingly, any future consideration of this case should take into consideration the existence of these records.

The appeal is REMANDED to the Agency of Original Jurisdiction (AOJ). VA will notify the Veteran if further action is required.


REMAND

In this case, the Veteran contends that his left knee lateral meniscal tear was aggravated during service. See October 2006 Claim; June 2011 VA Form 9, October 2014 Statement in Support of Claim. Prior to entry into service, an October 2002 Entrance Examination reflects that the Veteran had an arthroscopic repair to a torn meniscus of the left knee in August 2000. The examination further explains that the Veteran had no limitations or complications post-surgery and that he played football for two years following the procedure. As the Veteran's meniscus tear was noted at entry into service, the presumption of sound condition does not attach. 38 U.S.C.A. § 1111 (West 2002). The issue in this case with regard to the left knee disorder is thus whether this pre-existing disorder was aggravated by service. A pre-existing injury or disease will be considered to have been aggravated by service where there is an increase in disability during such service, unless there is a specific finding that the increase in disability is due to the natural progress of the disease. 38 U.S.C.A. § 1153 (West 2002); 38 C.F.R. § 3.306(a) (2014). Temporary or intermittent flare-ups during service of a pre-existing injury or disease are not sufficient to be considered aggravation in service unless the underlying disability, as contrasted to the symptoms of the disability, has worsened. See Crowe v. Brown, 7 Vet. App. 238, 247-48 (1994); Hunt v. Derwinski, 1 Vet. App. 292, 297 (1991). Clear and unmistakable evidence (obvious and manifest) is required to rebut the presumption of aggravation where the pre-service disability underwent an increase in severity during service. 38 C.F.R. § 3.306(b).

First, remand is required to obtain compliance with the Board's May 2014 remand. See Stegall v. West, 11 Vet. App. 268, 271 (1998) (holding that where the remand orders of the Board are not substantially complied with, the Board errs as a matter of law when it fails to ensure compliance). In the remand, the Board instructed the AOJ to ask the Veteran for authorization to obtain any medical records from his place of incarceration. However, the evidence of record indicates that the letter requesting information about private medical providers may have been sent to an incorrect address. The May 2014 Board remand was returned by the U.S. Postal Service as undeliverable in July 2014. Before receiving the returned mail, the AOJ also sent the Veteran a letter requesting authorization to obtain medical records from non-VA providers in June 2014. All subsequent correspondence was sent to a different address, listed by the Veteran on his June 2011 VA Form 9. The record does not show evidence of any attempts made to resend the June 2014 letter. The claims file also does not demonstrate evidence of efforts to verify the Veteran's address after July 2014. As a result, the AOJ should endeavor to both verify the Veteran's address and send another letter complying with this instruction to the appropriate address.

Second, remand is required to obtain an adequate VA examination. See Barr v. Nicholson, 21 Vet. App. 303, 312 (2007) (noting that when VA undertakes to provide a VA examination or obtain a VA opinion, it must ensure that the examination or opinion is adequate). The Veteran was scheduled for a VA examination in August 2014. The VA examiner diagnosed osteoarthritis of the left knee status post lateral meniscectomy. See August 2014 VA Examination, page 2. However, in noting the osteoarthritis, the examiner did not explain if this diagnosis is either a natural progression of the Veteran's left knee meniscal tear or a disorder that is separate from his left knee lateral meniscal tear.
 
The examiner also found that the knee condition was not aggravated beyond its natural progression by service. The examiner acknowledged that the Veteran's October 2006 Separation Examination reported pain and swelling, but failed to elaborate as to why these symptoms would not be considered an increase in the severity of the disability. If the examiner did consider either the pain and swelling or the diagnosed osteoarthritis to be an increase in the severity of the disorder, there was no opinion to explain why they were due to a natural progression of the disease. Generally, a medical opinion should address the appropriate theories of entitlement. Stefl v. Nicholson, 21 Vet. App. 120, 123-4 (2007).

Furthermore, some of the examiner's factual findings were inconsistent with the record. The examiner diagnosed osteoarthritis of the left knee status post lateral meniscectomy. See August 2014 VA Examination, page 2. However, the examiner incorrectly states the date of the diagnosis as 2000. The only available medical record from 2000 is the August 2000 Operative Report from Alamance Regional Medical Center detailing the Veteran's arthroscopic partial lateral meniscectomy. This report makes no mention of osteoarthritis. The examiner also seems to have overlooked certain medical records in his analysis. He states that post-service medical records show nothing related to knee problems until June 2011. See August 2014 VA Examination, page 10. The record shows that the Veteran first sought treatment for his knee after service in April 2009.

Finally, the examiner did not address the Veteran's lay statements elicited at the examination that he has had continuous symptoms since discharge. Therefore, the Board finds that an additional VA examination and medical opinion are necessary.

Accordingly, the case is REMANDED for the following action:

1. Attempt to verify the Veteran's current address. All efforts made to obtain this address must be noted in the claims file and any new address found must be substantiated by evidence associated with the claims file. If the Veteran's current address cannot be confirmed, the most recent address reported by the Veteran on his June 2011 VA Form 9 must be used as the last known address of record.

2. Following the above development, contact the Veteran at the appropriate address to request that he provide authorization to obtain all medical records from his place of incarceration. Subsequently, and after securing the proper authorizations where necessary, make arrangements to obtain all the records of treatment or examination from all the sources listed by the Veteran which are not already on file. All information obtained must be made part of the file. All attempts to secure this evidence must be documented in the claims file, and if, after making reasonable efforts to obtain named records, they are not able to be secured, provide the required notice and opportunity to respond to the Veteran and his representative.

3. Thereafter, schedule the Veteran for a VA examination to address the nature and etiology of any left knee disorder that may be present. The electronic claims file must be made available to and be reviewed by the examiner, and it should be confirmed that such records were available for review. Any and all studies, tests, and evaluations deemed necessary by the examiner should be performed. A comprehensive explanation for all opinions expressed must be provided.

The examiner must review all pertinent records associated with the claims file, including the Veteran's service treatment records, post-service medical records, and lay statements. It should be noted that the Veteran is competent to attest to factual matters of which he had first-hand knowledge such as observable symptomatology. If there is a medical basis to support of doubt the history provided by the Veteran, the examiner should provide a full reasoned explanation.

With respect to the Veteran's left knee lateral meniscal tear, the examiner must render an opinion as to whether there was any increase in the disorder during service. If the answer to the question is yes, the examiner must render an opinion as to whether the evidence clearly and unmistakably demonstrates that the increase was due to the natural progress of the disease or due to service.

The examiner must also clearly identify all other current disorders associated with the Veteran's left knee, to include osteoarthritis and chondromalacia.

With respect to each diagnosed disorder, the examiner must render an opinion, consistent with sound medical judgment, as to whether it is at least as likely as not (i.e., there is a 50 percent or greater probability) that the disorder was incurred in or aggravated by service.

If it is determined that the Veteran's meniscal tear was aggravated by service, with respect to each diagnosed disorder, the examiner is asked whether the disorder is caused or aggravated by the in-service aggravation of the meniscal tear or is a progression of that in-service aggravation of the meniscal tear.

In rendering an opinion, the examiner is asked to review and comment on the October 2006 Separation Examination in which the physician noted that the Veteran's continuous pain and swelling. The examiner should also take note of the Veteran's lay statement in his June 2011 VA Form 9 that he experienced flare ups of his disorder when exercising during service. 

4. Notify the Veteran that it is his responsibility to report for any scheduled examination and to cooperate in the development of the claim, and that the consequences for failure to report for a VA examination without good cause may include denial of the claim. 38 C.F.R. §§ 3.158, 3.655 (2014). In the event that the Veteran does not report for any scheduled examination, documentation must be obtained which shows that notice scheduling the examination was sent to the last known address. It must also be indicated whether any notice that was sent was returned as undeliverable.

5. Review the examination report to ensure that it is in complete compliance with the directives of this remand. If the report is deficient in any manner, the AOJ must implement corrective procedures. Stegall v. West, 11 Vet. App. 268, 271 (1998). 

6. After completing the above action, and any other development as may be indicated by any response received as a consequence of the actions taken in the paragraphs above, the claim must be readjudicated. If the claim remains denied, a supplemental statement of the case must be provided to the Veteran and his representative. After the Veteran and his representative have had an adequate opportunity to respond, the appeal must be returned to the Board for appellate review.
Review the claims file and ensure that the foregoing development actions have been conducted and completed in full. The AOJ must conduct any other development as may be indicated by a response received as a consequence of the actions taken in the preceding paragraphs.

The Veteran has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West Supp. 2013).


_________________________________________________
K. MILLIKAN
Veterans Law Judge, Board of Veterans' Appeals

Under 38 U.S.C.A. § 7252 (West 2002), only a decision of the Board of Veterans' Appeals is appealable to the United States Court of Appeals for Veterans Claims. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of your appeal. 38 C.F.R. § 20.1100(b) (2014).